UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                      :

ALISTER HARPER,                          :
                                        :

                       Plaintiff,      :
                                        :    **MEMORANDUM**
          -against-                :    <u>AND ORDER</u>
                                        :    09-CV-05571 (JG) (SMG)
CITY OF NEW YORK; POLICE OFFICER   :
HELLIESER, 79TH PRECINCT NYPD; POLICE :
OFFICER OBIE, 103RD PRECINCT, NYPD;  :
POLICE OFFICER JOHN C. TAVARAS, 103RD :
PRECINCT NYPD; POLICE OFFICER DAVID :
LEVY, 107TH PRECINCT NYPD; POLICE   :
OFFICER ROSA GOMEZ, 103RD PRECINCT  :
NYPD; POLICE OFFICER C. HAMLIN, NYPD, :
                                        :
                    Defendants.   :
--------------------------------------------------------------x
A P P E A R A N C E S

        ANDREW J. SCHATKIN
                350 Jericho Turnpike
                Jericho, New York 11753
                *Attorney for Plaintiff*

        NEW YORK CITY LAW DEPARTMENT
                100 Church Street
                Room 3-160
                New York, New York 10007
        By:    Shlomit Aroubas
                Rachel S. Weiss
                *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

        Alister Harper, who is represented by counsel, brings this action pursuant to 42

U.S.C. § 1983 against the City of New York ("the City") and six named individual New York

City police officers.  Harper seeks compensatory and punitive damages for alleged violations of

his civil rights based on what he identifies as a pattern of false arrests and "harassing incidents"

that took place between June 3, 2007 and June 28, 2009.  The City moves to dismiss the complaint against the individual defendants for failure to comply with Fed. R. Civ. P. 4(m), and against all defendants for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Oral argument was heard on the motion on November 10, 2010.  For the reasons stated below, Harper's claim against the City is dismissed pursuant to Rule 12(b)(6), and the claims against the individual defendants are dismissed pursuant to Rule 4(m).

## BACKGROUND

On December 21, 2009, Harper filed a complaint against the City and the New York City Police Department ("NYPD").  The complaint detailed a number of encounters between Harper and members of the NYPD that allegedly occurred between February 8, 1983 and August 29, 2005.  Alleging that these encounters involved violations of his civil rights, Harper asserted claims under 42 U.S.C. § 1983.  In a May 11, 2010 letter to the Court, the City and the NYPD requested permission to file a motion to dismiss on the grounds that all claims were barred by the applicable statute of limitations, and that the NYPD cannot be held liable under § 1983.

At a pre-motion conference at which all parties were represented, Harper's attorney drew my attention to a document that was filed as an attachment to the complaint that listed twenty-five summonses issued against Harper between August 7, 1998 and June 28, 2009.  All but two of these summonses were ultimately dismissed.[1]  Counsel argued that some of the later incidents referenced in the document had involved violations of Harper's constitutional rights and were within the limitations period for a claim under § 1983.  On the basis of these

---

[1]  Of the two that were not dismissed, one was an August 7, 1998 summons for disorderly conduct, the disposition of which is not indicated on the document.  The second was a May 17, 2008 summons for public urination, of which Harper was found guilty.

representations, I denied the defendants' request to file a motion to dismiss and instead directed Harper to file an amended complaint no later than June 1, 2010.

On June 7, 2010, Harper had not yet filed an amended complaint, and the City moved to have the case dismissed for failure to prosecute. On June 9, 2010, Harper responded by filing an amended complaint as well as a letter opposing dismissal. The amended complaint named as defendants the City and six individual police officers who were identified as Hellieser, Obie, John C. Tavaras, David Levy, Rosa Gomez, and C. Hamlin. The amended complaint described interactions between a number of police officers and Harper that allegedly took place on six occasions between June 3, 2007 and June 28, 2009. The pages of the amended complaint were numbered one through eight, but pages two and seven were missing. I denied NYC's motion to dismiss on June 10, 2010 and directed Harper to file a full copy of the amended complaint on or before June 15, 2010. Harper did so on June 12, 2010. Although the amended complaint added six new defendants, Harper's counsel did not present a summons or summonses for those defendants to the Clerk of Court for issuance pursuant to Fed. R. Civ. P. 4(b). No summons addressed to these defendants has issued.

The facts that follow are as alleged in the full version of the amended complaint. On June 3, 2007, Harper was charged with disorderly conduct and issued a summons by Rosa Gomez of the 103rd Precinct of the NYPD. Gomez and her partner were questioning a civilian who appeared to be mentally incompetent when Harper involved himself in the situation by inquiring about the civilian. "The female officer" – presumably Gomez – told Harper to "get the fuck out of her face" and then asked Harper for his identification in order to write a summons for Harper's allegedly violent and threatening behavior.

On June 9, 2007, plaintiff was issued another summons for disorderly conduct by officer Hellieser of the 79th Precinct. Harper called the police because he was being threatened in the street by "several youths" using anti-gay epithets. The police failed to respond, and, after being surrounded by the youths and hit in the back of the head with a metal folding chair, Harper called the police a second time. This time officers arrived at the scene, but they refused to assist Harper and prevented him from learning their names. These unnamed officers left Harper on the street with blood gushing from his head. The facts as stated in the amended complaint are muddled, but they suggest that at some point thereafter, a second pair of police officers and a number of New York City Fire Department ("FDNY") ambulance personnel arrived at the scene, and they, too, threatened Harper. One of the FDNY ambulance personnel donned a pair of leather gloves with the fingers cut off and moved to hit Harper, while he or a colleague stated that he would "knock [Harper's] ass out," as he had done to "other niggers." Harper does not allege that he was actually hit by any member of the NYPD or FDNY. Harper was arrested on charges of disorderly conduct for yelling in the street and intentionally causing unreasonable noise and was brought to the 79th Precinct stationhouse, where he was denied medical treatment for over an hour. The amended complaint does not specify what role Hellieser played in these events, other than issuing the summons, and it names no other individual officers in connection with the events.[2]

In a third incident mentioned in the amended complaint, Harper was charged with disorderly conduct by an unnamed officer of the 103rd Precinct. Harper alleges that he was

---

[2]     As mentioned, these events are alleged to have occurred on June 9, 2008. The initial complaint, filed on December 21, 2009, alleged that an almost identical incident occurred on August 29, 2005 in the exact same location. On the earlier occasion, Harper was allegedly hit in the back of the head with a metal chain, not a folding chair. The initial complaint also contains more detail about the event, but the allegations are otherwise the same, down to the fact about the leather gloves and the content of the NYPD and FDNY personnel's comments. The initial complaint identifies an Officer Thomas in connection with the event. No Officer Thomas is named as a defendant or otherwise mentioned in the amended complaint.

"unfairly targeted . . . by an officer of the 103rd Precinct, who issued a summons while he was peddling."  Harper provides no further details.

On June 2, 2008 Harper was stopped by police officer David Levy of the 108th Precinct and charged with jumping a subway turnstile and carrying an open container of beer. Harper had taken the subway in the wrong direction and tried to alert a transit officer that he needed to cross over a barrier to travel in the opposite direction.  After he was ignored by the transit officer, Harper walked toward the turnstile and was stopped by two officers – presumably one of whom was Levy – who had observed his attempt to get the transit officer's attention. Harper was issued two tickets, one for turnstile jumping, and the other for carrying an open container of beer.  Harper was carrying a brown bag which held a bottle of beer, but the bottle was not publicly visible until the police officers asked him to reveal the bag's contents.

Harper was again charged with disorderly conduct on July 1, 2008 and taken to the 103rd Precinct by Officer Obie.  On that day, Harper had a "peddler's table" set up outside a mall in Jamaica Queens.  Inside the mall, he argued with another civilian who had harassed him. Obie responded to a call concerning the altercation.  Upon arriving at the scene, Obie made sarcastic comments to Harper and continued to harass him as he followed Harper outside to his table.  Harper walked toward his car, saying he was going to get a video camera to tape the ongoing incident.  Obie followed him, issued him a summons, and brought him to the 103rd Precinct, where he was issued a desk appearance summons and released.

On June 28, 2009, in the final incident described in the amended complaint, Harper was arrested and charged by Officer C. Hamlin with selling merchandise from a stand that was taller than five feet and did not have the prices of the merchandise displayed.  The interaction with Hamlin began with Hamlin making false accusations about the proximity of

Harper's stand to a business's entrance. When Harper disagreed, the officer expressed a desire to find other violations committed by Harper and then issued the tickets. Harper had previously been targeted by a "team of officers who usually look for him when he goes to special events, such as the gay parade, to work every year."[3]

All violations charged in connection with these incidents were ultimately dismissed. The amended complaint alleges that each incident involved a false arrest, made without probable cause. Harper asserts a cause of action against the individual officers for violating his civil rights by perpetrating false arrests against him without probable cause in a clear pattern of harassment.[4] Harper also asserts a cause of action against the City for condoning and cooperating in a pattern of false arrests conducted by the NYPD. The amended complaint states a request for $5 million in compensatory damages for "great physical and emotional distress, including depression, anxiety and loss of sleep." In addition, Harper seeks $5 million in punitive damages, and attorney's fees and costs.

The defendants move to dismiss the amended complaint on several grounds. First, the defendants argue that all claims pertaining to the events of June 3, 2007 are barred by the statute of limitations that governs § 1983 actions. Second, they assert that Harper failed to serve the individual defendants within the statutory time limit, and that all claims against these defendants should be dismissed pursuant to Fed. R. Civ. P. 4(m). Finally, the defendants argue that the action should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) because Harper has failed to state a claim for relief under § 1983 against any of the defendants.

---

[3]     On the face of the complaint, this statement appears unconnected to the allegations concerning events on June 28, 2009. However, newspaper accounts reveal that the 40th Annual LGBT Pride Parade was held in New York on June 28, 2009. *See, e.g.*, USA Today, *Gay Pride Parade marks 40 years after the City Uprising* (June 28, 2009), http://www.usatoday.com/news/nation/2009-06-28-pride-nyc_N.htm. Presumably, the alleged incident involving Hamlin was one instance of the targeted harassment that Harper purportedly faces regularly at special events.

[4]     No specific allegations are made in the amended complaint with respect to Officer Tavaras.

DISCUSSION

A.      *Failure to State a Claim Against the City of New York*

The City argues that Harper has failed to state a claim against it and moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  A claim is facially plausible only if the pleaded facts permit a court to reasonably infer that the defendant is liable for the alleged misconduct.  *Id*.  "Factual allegations must be enough to raise a right to relief above the speculative level," and the stated grounds for relief must consist of more than "labels and conclusions."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Harper asserts that the City is liable under § 1983 for the series of false arrests allegedly perpetrated by members of the NYPD.  In order to hold the City liable under § 1983, Harper must make two showings:  First, Harper must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer[s]"; second, Harper "must establish a causal connection – an 'affirmative link' – between the policy and the deprivation of his constitutional rights."  *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (quoting *Oklahoma v. Tuttle*, 471 U.S. 808, 824 n.8 (1985)).

Harper has asserted that the series of alleged false arrests described in his amended complaint were perpetrated "with the condination [sic] and cooperation of the City of

New York," but he fails to trace these independent incidents to an official policy or custom of the City.  Harper does not allege that an official policy or custom caused him to suffer constitutional injury, and he alleges no facts that would support such a claim.  In *Twombly*, in the context of an antitrust action, the Supreme Court stated:

> Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make [a claim of coordinated action], they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

550 U.S. at 557.  As Harper has not alleged the existence of any facts that would suggest a municipal policy or custom responsible for the similar but independent actions allegedly taken by various members of the NYPD, he has failed to state a claim against the City.  Accordingly, NYC's motion to dismiss the claim asserted against it is granted.

B.      *Statute of Limitations*

        The defendants argue that any claim arising out of the alleged interaction between Harper and Gomez on June 3, 2007 was time barred by June 9, 2010 when Harper first attempted to file his amended complaint.  A claim filed under § 1983 in a federal court in New York is governed by New York State's default three-year limitations period for personal injury actions. *Shomo*, 579 F.3d at 181.  "The running of the statute of limitations on false imprisonment is subject to a distinctive rule . . . . Limitations begin to run against an action for false imprisonment when the alleged imprisonment ends."[5]  *Wallace v. Kato*, 549 U.S. 384, 389 (2007).  To determine when the limitations period began to run on claims relating to the events

---

[5]      A false imprisonment ends either when a plaintiff is released, or when he begins to be held pursuant to legal process.  *See Wallace v. Kato*, 549 U.S. 384, 389 (2007).

of June 3, 2007, it is necessary to determine when any imprisonment alleged by Harper in relation to those events ended.

Under New York law, a plaintiff has been falsely arrested when, "*inter alia . . .* the defendant intentionally confined him without his consent and without his justification." *Id.* A § 1983 claim for false arrest or false imprisonment "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause [and] is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). Hence, an individual who has been seized within the meaning of the Fourth Amendment has been "confined" for the purposes of a § 1983 claim for false arrest. "A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 544 (1980). Accordingly, when an individual has been "forcibly detain[ed] in the public streets," *Wallace*, 549 U.S. at 389 (internal quotation marks omitted), he has been "confined" for the purposes of a § 1983 claim for false arrest or false imprisonment. More specifically, "'a plaintiff pleads a seizure when he alleges that a police officer held on to his identification and ordered him to stay put while the police officer wrote out a summons.'" *Amore v. Novarro*, --- F.3d ---, 08-CV-3150, 2010 WL 3960574, at *6 n.13 (2d Cir. Oct. 12, 2010) (quoting *Burg v. Gosselin*, 591 F.3d 95, 96 n.3 (2d Cir. 2010)).

Harper alleges that on June 3, 2007, Gomez and/or her partner took his identification from him in order to write him a summons. To the extent that this alleged interaction amounted to a detention, any imprisonment ended when Harper would have felt free to leave the scene. Because Harper does not allege that he was taken into custody, this would

necessarily have been at some point on that same day. The three-year statute of limitations began to run at that time. *See Wallace*, 549 U.S. at 389. The amended complaint was filed more than three years after that date, and any claim arising out of the incident that occurred on June 3, 2007 is accordingly time-barred.[6]

Harper argues that his false arrest claim did not accrue until after the charges issued against him on June 3, 2007 were dismissed in court. He contends that the fact of the allegedly false arrest could not have been known until that time. This argument is unsupported by logic, as the elements of a false arrest claim do not involve charges issued against a plaintiff or their disposition. *Cf. Wallace*, 549 U.S. at 388 ("There can be no dispute that petitioner could have filed suit as soon as the allegedly wrongful arrest occurred subjecting him to the harm of involuntary detention, so the statute of limitations would normally commence to run from that date."). Furthermore, the Supreme Court has specifically rejected the theory that a claim for false arrest does not accrue until any related state criminal proceedings have ended. *Id.* at 392-94. Harper has cited no case law in support of his position, which is directly contrary to the clear holding of the Supreme Court.[7]

---

[6]   The initial complaint was filed on December 21, 2008, less than three years before the incident allegedly involving Gomez occurred on June 3, 2007. Harper does not argue that the claims in his amended complaint relate back to the initial complaint, and clearly they do not. Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure allows an amended complaint to relate back to the date of the original complaint only when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Harper attached to his initial complaint a chart setting forth twenty-five summonses issued against Harper between August 7, 1998 and June 28, 2009, including the summons issued on June 3, 2007. But neither the initial complaint nor the chart provided an account of the circumstances surrounding the issuance of the summons on June 3, 2007, and neither document raised the specter of a constitutional-rights violation in connection with that event. Furthermore, Rule 15(c)(1)(C) allows relation back of an amended complaint that adds a new defendant only if, within 120 days of filing of the initial complaint, the added party "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Neither of these requirements has been met. As discussed below, there is no indication that Gomez ever received notice of the action, let alone within 120 days of December 21, 2008. There is also no question of mistaken identity in the original complaint, and no reason for Gomez to have suspected that the initial complaint should have been filed against her.

[7]   Two of the cases cited by Harper refer to the "continuing violation" exception to the limitations period, *See Johnson v. Cullen*, 925 F.Supp. 244, 248 (D.Del. 1996); *Pena v. Travis*, No. 01 Civ.8534 (SAS), at *11

10

Accordingly, the City's motion to dismiss is granted with respect to all claims relating to the events of June 3, 2007.

C.    *Service of Process in Accordance with Rule 4(m)*

Rule 4(m) of the Federal Rules of Civil Procedure provides:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The Advisory Committee notes to the 1993 Amendment to Rule 4 explain that subdivision (m)

> explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed 120 days, and authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown.

Accordingly, a district court in the Second Circuit "*may* grant an extension in the absence of good cause, but it is not required to do so." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007).

---

n.3 (S.D.N.Y. Dec. 27, 2002) (citing *Cornwell v. Robinson*, 23 F.3d 696, 704 (2d Cir. 1994)), and one appears to rely on it without explicitly invoking it, *Clay v. LaPorta*, 815 F.Supp. 911 (E.D.Va. 1993). "The continuing violation doctrine is an 'exception to the normal knew-or-should-have-known accrual date.'" *Shomo*, 579 F.3d at 181 (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). When a plaintiff brings a § 1983 claim challenging that his constitutional rights were violated as a result of an alleged custom or policy, the statute of limitations period does not begin to run until the last act in furtherance of the policy. *See Cornwell*, 23 F.3d at 703. Although Harper cites several cases that reference the continuing violation doctrine, he does not purport to rely on it to extend the limitations period that otherwise bars all claims relating to the events of June 3, 2007. Any attempt to invoke the doctrine would be unavailing. To rely on the doctrine, a plaintiff "must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy." *Harris*, 186 F.3d at 250. The doctrine does not apply when a claimant challenges a series of discrete acts. *Shomo*, 579 F.3d at 181 (citing *Nat'l R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). I need not decide whether multiple false arrests can ever constitute a continuous series of events giving rise to a cumulative injury for the purposes of the continuing violation doctrine, or whether individual arrests should always be the subjects of separate claims. *See Shomo*, 579 F.3d at 182 (citing *Heard v. Sheahan*, 253 F.3d 316, 319-20 (7th Cir. 2001)). In this case, as discussed above, Harper has failed to allege that the incidents described in the amended complaint were the result of a custom or policy rather than discreet occurrences. The continuing violation doctrine therefore does not apply.

As Harper filed his amended complaint on June 9, 2010, the 120 days provided for in Rule 4(m) expired on October 7, 2010.[8] The City argues that Harper has not effected proper service on any of the individual defendants more than one month after expiration of the 120-day period. The City further argues that Harper's failure to serve these defendants results solely from the neglect of his counsel, and it moves for dismissal of all claims against the named defendants.

Harper contends that at least two of the defendants – Hellieser and Levy – have been properly served, and that there is good cause for his failure to serve three of the four remaining defendants – Obie, Tavaras, and Gomez.[9] Harper also argues that I should use my discretion to extend the 120-day period even in the absence of good cause, and should grant him more time to locate and serve any defendants who have not yet been served. Harper made his request for an extension only after the City, in its motion to dismiss, called attention to his failure to effect service within the 120-day period prescribed by Rule 4(m). The request for an extension was made for the first time on October 15, eight days after the 120-day time limit had expired.[10] I address the alleged failure to comply Rule 4(m), and the propriety of granting an extension, with respect to each defendant in turn.

---

[8] The City notes that there is some ambiguity as to whether the 120-day period began to run on June 9, 2010, when the incomplete version of the amended complaint was filed, or on June 12, 2010, when the omission was corrected. Using the later date to calculate the time limit for service pursuant to Rule 4(m) would provide Harper with three extra days – until October 10, 2010 – to effect service. Because Harper appears not to have taken any action toward satisfying the Rule 4 service requirements between October 7 and October 10, I need not decide on which of the two filing dates the 120-day clock began to run.

[9] With respect to Officer Hamlin, Harper states only that he "could not be located" and seems to concede that no good faith effort was made to serve him.

[10] If the 120-day clock began to run on June 12, 2010, October 15 is five, not eight, days after the period ended. Under either calculation, Harper made no request for an extension before the time limit for service expired.

1.	*Officer Gomez*

Harper contends that he made "reasonable efforts" to serve his amended complaint on Gomez. Attached to his memorandum is an affidavit stating that on June 11, 2010 an attempt was made to serve Gomez at the 103rd Precinct, where Harper believed Gomez to be employed. The attempt failed, as Gomez was unknown at the location. Pl.'s Mem. Opp., Ex. A, Oct. 21, 2010, ECF No. 21. In the nearly four months between that first attempt and the conclusion of the 120-day period, Harper made no further attempts to serve Gomez, and he offers no justification for his lack of vigilance. Only counsel's oversight or disregard of Rule 4's requirements can explain Harper's failure to serve Gomez. Neither constitutes good cause within the meaning of Rule 4(m). *See Tillman v. N.Y. State Dept. of Mental Health*, 776 F.Supp. 841, 844 (S.D.N.Y. 1991), *aff'd*, 963 F.2d 1521 (2d Cir. 1992).

It is within my discretion to grant an extension of Rule 4(m)'s time limit even without a showing of good cause. *See Zapata*, 502 F.3d at 193. After considering the equities, I see no reason to do so where the need for the extension results entirely from counsel's neglect and the request for it came only after the time for service expired, in response to a motion to dismiss. Furthermore, in the amended complaint, Gomez is named only in connection with events that occurred on June 3, 2007. I have already found that all claims arising out of these events are time-barred. Even if Gomez had been properly served, the claim asserted against her would be dismissed.

Accordingly, I decline to extend the time for service with respect to Gomez, and she is dismissed from the case pursuant to Fed. R. Civ. P. 4(m).

### 2. *Officer Hamlin*

Harper never attempted to serve Hamlin. He has submitted a "service status update" from a process server, reflecting that on June 10, 2010, the process server was "still awaiting [Hamlin's] address for service." Pl.'s Mem. Opp., Ex. A. In the ensuing months, Harper took no steps to serve the defendant, and he provides no justification for his inaction.

Harper has not made a showing of good cause, and he has not asked me to grant an extension with respect to Hamlin, *see* Pl.'s Mem. Opp. at 15 ("[W]ith respect to two of the individual Defendants, [Hellieser and Levy,] the case should go forward and with respect to the three others, [Obie, Tavaras, and Gomez,] it is respectfully requested that the Plaintiff grant the Plaintiff more time to locate and serve these officers."). Had Harper applied for an extension, I would have denied it in light of Harper's failure to advance "some colorable excuse" for the total neglect of his responsibility. *Zapata*, 502 F.3d at 197-98 (Second Circuit case law "suggests that, before [the circuit] will even consider vacating a Rule 4(m) dismissal for abuse of discretion, the plaintiff must ordinarily advance some colorable excuse for neglect" (citing *Bogle-Assega v. Connecticut*, 470 F.3d 498, 509 (2d Cir. 2006))). I note that the incident allegedly involving Hamlin occurred on June 28, 2009, which was less than three years ago, and that the statute of limitations has not expired on Harper's claim against Hamlin.

Accordingly, the claim asserted against Hamlin is dismissed pursuant to Fed. R. Civ. P. 4(m) for failure to serve within 120 days after the amended complaint was filed.

### 3. *Officer Tavaras*

An affidavit attached to Harper's memorandum indicates that an attempt was made on June 11, 2010 to serve Tavaras at the 103rd Precinct. As with Gomez, the attempt failed because Tavaras was unknown at the location. Pl.'s Mem. Opp., Ex. A. Harper contends

that this single attempt, followed by a four-month period of inaction that extended beyond the 120-day period for timely service, constituted "significant efforts" to effect service. I disagree and conclude there is no good cause for the failure to timely serve Tavaras.

I also decline to exercise my discretion to grant an extension with respect to Tavaras in the absence of good cause. Harper has made no specific allegations against Tavaras. Indeed, his amended complaint mentions Tavaras only in the caption, in a statement to the effect that Tavaras is employed by the NYPD in the 103rd Precinct, and in conclusory allegations that Tavaras, along with the other named defendants, violated Harper's civil rights by perpetrating a false arrest. While Harper purports to assert a claim against Tavaras, he has failed to allege that the officer engaged in activity that is actionable under § 1983. Accordingly, granting Harper an extension of time in which to serve Tavaras would be as futile as it would be uncalled for in light of counsel's neglect.

4.    *Officer Obie*

Harper made the same half-hearted effort to serve Obie as he made to serve Gomez and Tavaras: a single attempt on June 11, 2010 at the 103rd Precinct, which failed because Obie was unknown at the location. Harper took no further action. *See* Pl.'s Mem. Opp., Ex. A. Harper asks for an extension of time to locate and serve Obie. He first made this request only after the time limit for service had passed, and only in response to NYC's motion to dismiss, which highlighted the deficiencies in service. Harper offers no excuse for his failure to satisfy Rule 4(m), which is fully attributable to the neglect of counsel. I note that the incident allegedly involving Obie occurred less than three years ago, on July 1, 2008, and that the statute of limitations has not yet run on Harper's claim against Obie.

Accordingly, the claim against Obie is dismissed for Harper's failure to effect service within 120 days of filing the amended complaint.

5.      *Officer Levy*

Harper argues that Levy was properly served with a summons and a copy of the amended complaint on July 20, 2010, within Rule 4(m)'s 120-day time limit.  Harper has submitted an affidavit of service showing that, on July 19, 2010, a summons and a copy of the amended complaint were delivered to Levy's usual place of business, the 107th Precinct, where they were left with a person of suitable age and discretion, and that on July 20, 2010, copies of the documents were mailed first class to the same address.  Pl.'s Mem. Opp., Ex. A.  These procedures satisfy the requirements of Fed. R. Civ. P. 4(e) for serving an individual in New York.[11]

However, the summons that was served on Levy cannot have met the requirements of Fed. R. Civ. P. 4(a), which stipulates that a summons must be signed by the Clerk of Court and must bear the Court's seal.  Under Rule 4(b),

> On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal.  If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant.  A summons – or a copy of a summons that is addressed to multiple defendants – must be issued for each defendant to be served.

The docket sheet reveals that the Clerk of Court never issued a summons for Levy or for any of the other named defendants.  While Harper argues that a summons was delivered to Levy within the 120 days allowed by Rule 4(m), it was not a summons that could have been properly served

---

[11]      Rule 4(e)(1) of the Federal Rules of Civil Procedure provides that an individual may be served in a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  New York law provides that a natural person may be served "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business . . . of the person to be served and . . . by mailing the summons by first class mail to the person to be served at his or her actual place of business, . . . such delivery and mailing to be effected within twenty days of each other."  N.Y. C.P.L.R. § 308(2).

within the meaning of that rule, and it was insufficient to confer personal jurisdiction over Levy in this Court.[12] *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3rd Cir. 1996). Accordingly, Levy was not served within the 120-day period allowed by Rule 4(m).

Yet again, the violation is due entirely to the neglect of Harper's counsel. The docket shows that, upon filing the initial complaint on December 21, 2009, counsel obtained a proper summons from the Clerk for the original defendants, the City and the NYPD, but he inexcusably failed to obtain summonses from the Clerk for the named defendants who were added as parties when the amended complaint was filed several months later. More than one month after the 120-day time limit for service has expired, the docket reflects that summonses have still not issued for those defendants. Harper's counsel continues to argue that Levy was properly served, even though he was notified of the defect in the summons over a month ago, when the City filed its motion to dismiss.

Because Harper argues that Levy was properly served, he does not ask for an extension of time. I would have declined such a request had one been made, as this "situation is the result of [counsel's] neglect," *Zapata*, 502 F.3d at 198, and counsel has made no effort to correct it. I also note that the false arrest allegedly perpetrated by Levy occurred on June 2, 2008. The statute of limitations has not yet expired on that claim.

Accordingly, the claim asserted against Levy is dismissed pursuant to Fed. R. Civ. P. 4(m) for failure to serve the defendant within 120 days of filing the amended complaint.

---

[12]     At oral argument, Harper's attorney cited *New York Transp., Inc. v. Naples Transp., Inc.* for the proposition that service of a photocopy of a summons satisfies Rule 4's requirements. *See* 116 F.Supp.2d 382, 386 (E.D.N.Y. 2000) (emphasis added). But when a photocopy is served, Rule 4 is satisfied only if the photocopy is "of the original summons on defendants in [an] action." *Id.* Harper's counsel acknowledged at oral argument that the Clerk of Court never issued summonses for the individual defendants in this case. Counsel was unable to identify or describe the document he had photocopied and served on Levy as a purported summons. Whatever that document was, it cannot have been a summons satisfying the requirements of Rule 4.

5.      *Officer Hellieser*

As with Levy, Harper incorrectly asserts that Hellieser was properly served.  A summons and a copy of the amended complaint were left on June 11 with a person of suitable age and discretion at the 79th Precinct, Hellieser's usual place of business, and four days later a copy of the documents were sent to the precinct by first class mail.  Pl.'s Mem. Opp., Ex. A.  But the Clerk never issued a summons for Hellieser, so he cannot have been properly served, and the failure once again is due entirely to counsel's neglect.

Dismissal of the claim against Hellieser would have more serious consequences than the dismissal of Harper's other claims.  Harper alleges that Hellieser violated his constitutional rights over three years ago, on June 9, 2007.  Although a dismissal under Rule 4(m) is without prejudice to refiling, Harper would not be able to revive his claim against Hellieser if I were to dismiss it now, as the statute of limitations has expired.  *See Frasca v. United States*, 921 F.2d 450, 453 (2d Cir. 1990) ("[T]he statute of limitations for the underlying claim is tolled during [Rule 4(a)'s 120-day] period[, but if] service is not complete by the end of the 120 days . . . the governing statute of limitations again becomes applicable, and the plaintiff must refile prior to the termination of the statute of limitations period.")

Particularly where dismissal without prejudice under Rule 4(m) would constitute *de facto* dismissal with prejudice, I must carefully consider the impact such an action will have on the parties.  However, I need not grant an extension simply because Harper will otherwise be barred from bringing his claim.  *See Zapata*, 502 F.3d at 197 ("Where, as here, good cause is lacking, but the dismissal without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice, we will not find an abuse of discretion in the procedure used

by the district court, so long as there are sufficient indications on the record that the district court weighed the impact that a dismissal or extension would have on the parties." (footnote omitted)).

In *Zapata*, the Second Circuit upheld a district court's refusal to grant an extension of time to serve where the statute of limitations for the underlying claim had run, but the plaintiff had "made no effort to effect service within the service period, neglected to ask for an extension within a reasonable period of time, and . . . advanced no cognizable excuse for the delay." *Id*. at 199. Harper's counsel has likewise offered no explanation for his failure to serve Hellieser or to ask the court for additional time before the 120 days expired if such time was needed. Counsel failed to obtain summonses from the Court for the individual defendants. Approximately five months later, he has still not presented summonses to the Clerk for issuance, even though he was explicitly alerted at least one month ago of the need to do so. At oral argument, counsel resisted the obvious fact that Hellieser has not been properly served.

I am acutely aware that behind counsel stands a plaintiff who has alleged a violation of his constitutional rights, and who will be unable to pursue his claim against Hellieser if it is now dismissed due to counsel's neglect. Nonetheless, in light of counsel's continuous disregard of the procedures that govern this action, I see no justification for extending the time to serve Hellieser. Counsel's disregard of Rule 4's requirements reflects a troubling pattern of carelessness by counsel with his client's claims of police misconduct. Those claims were not asserted at all in the initial complaint, a scattershot compendium of alleged events occurring anywhere from five to twenty-seven years earlier. When plaintiff's counsel stated at a pre-motion conference that the real claims in the case actually arose out of a series of summonses set forth in a chart attached as an exhibit to the complaint, he was given an opportunity to file an amended complaint setting forth those claims. Counsel dropped the ball, missing the June 1,

2010 deadline. Jarred into action by a motion to dismiss, counsel filed part of an amended complaint eight days late. Woken up by another motion to dismiss to the fact that two pages of the eight-page complaint had been omitted, counsel finally filed the entire amended complaint on June 12, but he failed to obtain summonses for the newly added individual defendants. In addition, the allegations in the amended complaint, when compared to those in the initial complaint, demonstrate either that Harper was the victim of an extremely bizarre coincidence or that his lawyer carelessly lost sight of what Harper alleged took place on what occasion. *See* n.2, *supra*. Counsel then failed to serve four of the individual defendants with anything and "served" the other two, including Hellieser, with a photocopy of something – he cannot say what, though he admits it could not have been a summons addressed to them. Having had his attention drawn to those failures by yet another motion to dismiss, counsel has responded, in essence, by trying to substitute his own outrage at the alleged misconduct of the officers for compliance with the basic procedural rules governing his client's case.[13]

Because he does not acknowledge that Hellieser has not been properly served, Harper has not requested an extension of time in which to serve him. If a request were made to extend the time for service of process provided for under Rule 4(m), I would deny it. Accordingly, Harper's claim against Hellieser is dismissed for failure to serve in accordance with Rule 4.

---

[13]     *See* Transcript of Oral Argument, Nov. 10, 2010, at 7 (Counsel for Harper: "Yes, maybe I botched it. But look what they did. I don't think they have any standing to even appear in this court and – in fact, if my client were here, I would say to them, please, apologize."); *id.* at 9 (Counsel for Harper: "This man is being arrested and the cases are being dismissed. Are you saying they have no responsibility in this case? They walk away on a technicality. You say I did something wrong. Maybe I did. Maybe I didn't. Well, who is wrong here, morally and legally? That's the issue."); *id.* at 10 (Counsel for Harper: "I respect your view, your Honor, saying I botched it or whatever. Look, I mean the whole world is botched, including me.").

CONCLUSION

For the reasons stated above, Harper's claim against the City is dismissed pursuant to Rule 12(b)(6), and the claims against the individual defendants are dismissed pursuant to Rule 4(m).

So ordered.

John Gleeson, U.S.D.J.

Dated: November 17, 2010
Brooklyn, New York